## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DENNIS SOBIN**,

        Plaintiff,

        v.

**WASHINGTON, D.C. BOARD OF ELECTIONS; D.C. ADVISORY NEIGHBORHOOD COMMISSION 2A**,

        Defendants.

Case No. 25-cv-394 (CRC)

## OPINION

From noisy neighbors to rummaging rodents, when Washington, D.C. residents need help dealing with the everyday aggravations of urban life, their first call is often to their Advisory Neighborhood Commission ("ANC" or "Commission") representative. Plaintiff Dennis Sobin aspires to be on the other end of the line. In November 2024, Mr. Sobin ran as a write-in candidate for the available commissioner position in his Foggy Bottom neighborhood, District 2A09. He lost, but the winner of the election was later declared ineligible to serve as a commissioner, so the D.C. Board of Elections ("Board") certified the seat as vacant. Sobin wanted a second chance to run. However, he states that he was unable to throw his hat in the ring because he is disabled and thus could not collect the 25 signatures required under D.C. law to qualify as a candidate.

Sobin filed suit in February 2025, challenging the Board's process for filling the ANC vacancy in District 2A09 as inconsistent with its obligations under Title II of the Americans with Disabilities Act ("ADA"); by way of relief, he only requested to "[s]top the election pending a

decision on []his complaint." But based on the peculiarities of the D.C. statute governing the ANC, there was ultimately no election, and the vacancy was filled by a non-competitive process.

The Defendants in the case—the D.C. Board of Elections and ANC 2A—have filed a motion to dismiss Sobin's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that (1) the case is moot; (2) Sobin lacks standing; and (3) even setting those jurisdictional hurdles aside, his complaint fails to state an ADA claim. Upon consideration of the parties' briefing and for the reasons stated below, the Court will GRANT Defendants' motion and dismiss this matter.

## I. Background

Created by the D.C. Home Rule Act, ANCs are non-partisan neighborhood bodies that

> advise the Council of the District of Columbia, the Mayor and each executive agency, and all independent agencies, boards and commissions of the government of the District of Columbia with respect to all proposed matters of District government policy including, but not limited to, decisions regarding planning, streets, recreation, social services programs, education, health, safety, budget, and sanitation which affect that Commission area.

D.C. Code § 1-309.10(a). Each ANC has a body of commissioners who serve two-year terms. Id. at § 1-309.06(b)(1). General ANC elections are held in November every two years. See id. at § 1-309.06(a).

On occasion, commissioner seats open up unexpectedly. When a vacancy occurs within the six-month period before a general election, the position is left open. Id. at § 1-309.06(d)(1). But when a vacancy arises outside that six-month period, things look a little different. After the D.C. Board of Elections declares such a vacancy, persons interested in filling the position have three weeks to submit a petition to the Board "that contains the signatures of at least 25 registered qualified electors within the affected single-member district." Id. at § 1-309.06(d)(6)(C). "If there is only one person qualified to fill the vacancy . . ., the vacancy shall

be deemed filled by the qualified person."  Id. at § 1-309.06(d)(6)(D).  But if there is more than one qualified candidate, the ANC must hold a special election to fill the commissioner seat.  Id. at § 1-309.06(d)(6)(E).

Mr. Sobin's election saga started in November 2024, when he ran for a commissioner seat in District 2A09, as a write-in candidate, during the general election.  Sobin lost that race but challenged the result in the D.C. courts after the victor was determined ineligible to serve in the role.  See generally Sobin v. D.C. Board of Elections, 328 A.3d 416 (D.C. 2024).  Sobin argued that, as a duly-qualified runner-up, he should have been declared the winner.  The D.C. Court of Appeals disagreed, noting that "under the 'American rule,' . . . a runner-up finisher cannot be declared the winner in the event the winner is disqualified."  Id. at 417 (quoting Bates v. D.C. Bd. of Elections & Ethics, 625 A.2d 891, 895 (D.C. 1993)).  Following that appellate decision, the Board certified the District 2A09 commissioner vacancy on January 10, 2025 and called for the submission of petitions from persons interested in filling the role between January 13 and February 3.  See Mot. to Dismiss at 3 (citing 72 D.C. Reg. 000271 (Jan. 10, 2025)).

Sobin filled out a *pro se* complaint in this Court on January 12, 2025, which was received and docketed on February 4, 2025.  In his complaint, Sobin alleged the following:

> The defendants are holding an election in the time period specified in violation of [t]he Americans with Disabilities Act of 1990.  The election is for ANC commissioner in plaintiff's single member ANC district of 2A09 but [plaintiff] will not be able to participate as a candidate or voter [in the election] since there are no provisions to allow participation of handicapped individuals.  Plaintiff is 81 years old and handicapped as a recovering stroke patient who is often a shut in.  Since the election requires sign[a]ture gathering for petitions to run (there is no provision for a candidate to run as a write[-][in] which plaintiff must do because of his limited mobility) and no absentee voting, he is excluded from the election as both a candidate and a voter.  This is in direct violation of the ADA which requires the full participation in elections of handicapped individuals.

Complaint at 5.  Though Sobin's complaint gives the Court relatively little factual material to work with, he appears to bring two distinct claims: first, that he was unlawfully prevented from participating in the anticipated election as a *candidate* due to the minimum signature requirement, and second, that he was unlawfully prevented from participating in the anticipated election as a *voter* due to the unavailability of absentee voting.

Sobin's complaint asked for just one remedy: to "[s]top the election pending a decision on this complaint." Id.  But as it turned out, only one eligible candidate successfully submitted a petition, so on February 28, the Board deemed the District 2A09 vacancy filled by that candidate without any need for a special election, pursuant to D.C. Code § 1-309.06(d)(6)(D). See 72 D.C. Reg. 002122.[1]

Defendants moved to dismiss Sobin's complaint for lack of subject matter jurisdiction and failure to state a claim under the ADA.  With briefing complete, that motion is now ripe for the Court's review.

## II.    Legal Standards

Defendants have moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  To survive dismissal under Rule 12(b)(1), a plaintiff "bears the burden of demonstrating" that the Court possesses subject matter jurisdiction over the case. Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008).  "On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the nonmoving party is entitled to all reasonable

---

[1] As the Court explains below, it may take judicial notice of matters of public and government record.  See Cannon v. DC, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

inferences." <u>Daniels v. Union Pacific R. Co.</u>, 480 F. Supp. 2d 191, 194 (D.D.C. 2007).

However, the Court may consider documents outside the pleadings to assure itself that it has

jurisdiction, without converting the motion into one for summary judgment.  <u>See</u> <u>Haase v.</u>

<u>Sessions</u>, 835 F.2d 902, 905–06 (D.C. Cir. 1987).  And it is ultimately "the plaintiff's burden to

prove subject-matter jurisdiction by a preponderance of the evidence." <u>Henry v. Azar</u>, 518 F.

Supp. 3d 520, 525 (D.D.C. 2021).

   Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially

plausible when the pleaded factual content "allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556).  A complaint

must offer more than "naked" assertions or "legal conclusions couched as factual allegations."

<u>Id.</u> (cleaned up).  In ruling upon a motion to dismiss for failure to state a claim, a court may

consider the facts alleged in the complaint, any documents attached to or incorporated in the

complaint, matters of which a court may take judicial notice, and matters of public record.  <u>See</u>

<u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).

   In a *pro se* case such as this one, the complaint must be "liberally construed" and,

"however inartfully pleaded, . . . held to less stringent standards than formal pleadings drafted by

lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97,

106 (1976)).  Further, in assessing the sufficiency of a *pro se* complaint, the Court may "consider

supplemental material filed by a pro se litigant in order to clarify the precise claims being

urged." <u>Wada v. U.S. Secret Serv.</u>, 525 F. Supp. 2d 1, 9 (D.D.C. 2007) (quoting <u>Greenhill v. Spellings</u>, 482 F.3d 569, 572 (D.C. Cir. 2007)).

### III.  Analysis

The Defendants advance three reasons why the Court should dismiss Sobin's complaint. *First*, his ADA claims are moot because the commissioner seat for District 2A09 is no longer vacant.  *Second*, Sobin lacks standing to challenge his exclusion as a voter in the special election he anticipated because there was no election.  And *third*, the complaint fails to state a viable ADA claim.

The Court will start with the first two issues, which are related and jurisdictional in nature.  "Article III of the Constitution grants federal courts power to 'adjudicate only actual, ongoing cases or controversies.'" <u>Samma v. Dep't of Defense</u>, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (quoting <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477 (1990)).  Both standing and mootness "ask whether a case or controversy exists." <u>Brookens v. AFGE</u>, 315 F. Supp. 3d 561, 568 (D.D.C. 2018).  But they are distinct in that standing "poses this question at the time the litigation is commenced, while mootness considers whether the requisite controversy continues to exist throughout the litigation." <u>Id.</u>  In evaluating both standing and mootness, courts are to assume that plaintiffs will succeed on the merits.  <u>See</u> <u>Sandpiper Residents Ass'n v. HUD</u>, 106 F.4th 1134, 1141 (D.C. Cir. 2024); <u>LaRoque v. Holder</u>, 650 F.3d 777, 785 (D.C. Cir. 2011).

At the time the litigation commenced, it was not obvious that Sobin lacked standing to challenge methods of voting in a potential District 2A09 special election because he also sought to challenge his own exclusion as a candidate, and if he had been successful in doing so, he would presumably have forced an election in which he could have voted.  The Court is therefore not entirely persuaded that Sobin's "claim that he *would be* precluded from participating in the

6

SMD 2A09 special election by a lack of absentee voting was mere speculation." Mot. to Dismiss at 6.

To the extent that the lack of special election poses a problem for Sobin, it is a mootness problem. There is no "case or controversy" within the meaning of Article III, and a case becomes moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). "Even where litigation poses a live controversy when filed, a federal court must refrain from deciding the dispute if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Samma, 136 F.4th at 1113 (cleaned up). At the same time, a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Sandpiper Residents Ass'n, 106 F.4th at 1141 (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)).

Even assuming that Sobin is right that the ANC vacancy-filling process ran afoul of the ADA because it deprived him of the opportunity to participate as a candidate and a voter in a potential special election, there ultimately was no election, and the commissioner seat has since been filled. Sobin's only requested relief was to *stop* the election from happening; although his complaint and opposition brief allude to the minimum signature requirement, the unavailability of a write-in option, and the lack of absentee voting as obstacles preventing his full participation, he has not asked the Court for any specific relief as to these features.[2] As such, "events [have]

---

[2] It is worth noting here that Sobin did not file a motion for a temporary restraining order or a preliminary injunction, even though the relief he sought was time-sensitive. In order for a plaintiff to request preliminary relief, he must file a motion or document "separate from the complaint" and abide by certain procedural requirements. See D.D.C. Local Civ. Rules 65.1(a), (c); Fed. R. Civ. P. 65. Sobin did not meet these requirements.

outrun the controversy such that the court can grant no meaningful relief." <u>Pulphus v. Ayers</u>, 909 F.3d 1148, 1152 (D.C. Cir. 2018) (citation omitted).

In his opposition to the motion to dismiss, Sobin insists that there *was* an election. "It was not a traditional election," he posits, "but it was an election since voters were able to sign a nominating petition to select their candidate who would win the office sought if no other nominating petitions were filed, or would face competition with other candidates if other nominating petitions were filed." Opp. to Mot. to Dismiss at 1. In other words, "the very fact of being nominated by voters was a voter selection process." <u>Id.</u> Although the oddities of ANC electoral procedure (*i.e.*, the fact that a person could fill a commissioner seat without being elected in a competitive process) blur some conceptual lines, the D.C. Code clearly distinguishes between the process of filling a vacancy where there is only one qualified candidate, on one hand, and a special election in which residents "vote to elect a Commissioner," on the other. <u>Compare</u> D.C. Code § 1-309.06(d)(6)(D), <u>with</u> D.C. Code § 1-309.06(d)(6)(E)(i). The Court need not accept Sobin's legal conclusion that the filling of a vacancy *is* an election. But even if it were to treat Sobin's request for relief as a request to stop the filling of the District 2A09 vacancy, that seat was filled months ago, so Sobin's mootness problem remains unsolved.

There is one last doctrinal stone worth turning over. Not infrequently in time-bound election-related cases, courts apply the "capable of repetition, yet evading review" exception to mootness. <u>See, e.g.</u> <u>Davis v. FEC</u>, 554 U.S. 724, 735 (2008); <u>FEC v. Wisconsin Right to Life, Inc.</u>, 551 U.S. 449, 462 (2007); <u>Independence Inst. v. FEC</u>, 216 F. Supp. 3d 176, 182–85 (D.D.C. 2016); <u>La Botz v. FEC</u>, 889 F. Supp. 2d 51, 58–59 (D.D.C. 2012). Under this doctrine, a plaintiff must show that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same

complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (cleaned up).

Sobin has not raised this exception in his opposition to the motion to dismiss, which is understandable given that he brought this case *pro se* and thus cannot be expected to have mastered a technical doctrine like mootness. But even if he had raised the exception, it does not apply. Sobin may very well try to run for an open commissioner seat or wish to vote in such an election again, though his complaint does not make as much clear. But it would be possible to fully litigate the identified issues in advance of a future election. For one thing, commissioner candidates in general elections—not just special elections—must collect at least 25 signatures in order to nominate themselves for the position. D.C. Code § 1-309.05(b)(1)(B). Because general elections happen every two years, a prospective litigant need not wait for a commissioner vacancy to arise in order to challenge the signature requirement as inconsistent with the ADA. Furthermore, a prospective litigant could bring a facial challenge to whatever provision of the D.C. Code or administrative decision precludes absentee voting in special ANC elections— though Sobin has not identified such a provision, and to the contrary, it appears that absentee voting may very well be available in ANC elections. See, e.g., Scolaro v. D.C. Bd. of Elections & Ethics, 717 A.2d 891, 897 (D.C. 1998) (discussing the counting of "machine," "absentee," and "special" ballots in an ANC election); D.C. Code § 1-309.06(d)(6)(E)(i) (setting forth a minimum of "at least" four hours of in-person voting, but nowhere clearly precluding other forms of voting; ANC 2A By-Laws, Art. III. Commissioners (2024), https://anc2a.org/bylaws/ (last visited Feb. 20, 2026); see also Mot. to Dismiss at 8 ("[T]he ANC Act only sets minimum requirements for voting in . . . special elections . . ., and nothing precludes the ANC responsible for holding the election from accommodating voters with disabilities.").

If a future ADA challenge to the ANC voting statute resembles the challenge Sobin has levied here, the Court doubts it would be successful. "Generally, an [ADA] plaintiff may base his discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." Seth v. DC, No. 18-1034 (BAH), 2018 WL 4682023, at *10 (D.D.C. Sept. 28, 2018) (cleaned up). Sobin has not established that he experienced intentional discrimination on account of his disability, as required for a disparate treatment claim. Id. at *11. He has not shown that the challenged conduct has had a disparate impact on persons with disabilities, other than to protest that he himself has been disadvantaged—but without more, "[a]llegations about . . . individual[s'] experiences accessing" public goods and services say nothing about "disparate impact on persons with disabilities[] . . . as opposed to persons without disabilities[]." Boykin v. Fenty, 650 Fed. App'x 42, 44 (D.C. Cir. 2016). And Sobin cannot demonstrate that the Board denied him a reasonable accommodation, not least because he never alleges having requested one. See, e.g., Pappas v. DC, 513 F. Supp. 3d 64, 87 (D.D.C. 2021) (explaining that failure to request an accommodation is fatal to a failure-to-accommodate claim).

More fundamentally, Sobin seems to want the Board to provide him with his preferred accommodation: the ability to force a special election under D.C. Code § 1-309.06(d)(6)(E)(i) and run as a write-in candidate without personally collecting the requisite number of signatures. See, e.g., Opp. to Mot. to Dismiss at 1 (implying that the availability of a write-in option would have allowed Sobin to participate in filling the District 2A09 vacancy). But it is well-established that Title II of the ADA requires the provision of a "reasonable" accommodation, not necessarily the "accommodation [the plaintiff] most prefers." Bonnette v. DC Court of Appeals, 796 F. Supp. 2d 164, 183 (D.D.C. 2011); see also Ali v. Regan, 111 F.4th 1264, 1269 (D.C. Cir. 2024).

On first blush, the Board's suggestion that Sobin could authorize a representative to gather signatures on his behalf is not unreasonable—especially because Sobin's alternative and preferred option would allow him to circumvent a statutory requirement that all commissioner candidates must satisfy.  Cf. Bonnette v. DC Court of Appeals, 796 F. Supp. 2d 164, 183–84 (D.D.C. 2011) (explaining that "whether a particular accommodation is 'as effective' as another depends on context," even and including in the electoral setting).

In conclusion, the Court concludes that the case is moot because the only form of relief that Sobin requested in his complaint was to stop any imminent election—or, reading the complaint more generously given Sobin's *pro se* status, to stop the Board from filling the District 2A09 vacancy.  It goes without saying that "this [C]ourt has no power to alter the past."  Herron for Congress v. FEC, 903 F. Supp. 2d 9, 13 (D.D.C. 2012).  And no mootness exception has been raised or appears to apply.  As there is no live case or controversy before the Court, it lacks power to adjudicate this dispute.

## IV.   Conclusion

Because events have rendered this case moot, the Court GRANTS Defendants' [6] Motion to Dismiss Plaintiff's Complaint.  A separate Order shall accompany this Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  February 20, 2026

11